20555

In the Matter of Irvine BELSER, Respondent.

(289 S. E. (2d) 492)

*Daniel R. McLeod, Atty. Gen., A. Camden Lewis and Richard B. Kale, Jr., Asst. Attys. Gen.,* of Columbia, *for Complainant.*

*Julius W. McKay,* of Columbia, *for Respondent.*

December 1, 1977.

*Per Curiam:*

This matter is before the court for review as a result of the report of the Board of Commissioners on Grievances and Discipline. The respondent, Irvine Belser, has been found guilty of misconduct as an attorney.

The case came to be heard before the Board as a result of a complaint initiated by John Wren, a suubstantial stockholder in Belser-Wren Industries, Inc., a South Carolina corporation served by the respondent as counsel. The complaint alleges that the respondent filed a certificate of limited partnership agreement containing false information, attempted to secure the signature of John Wren on a back-dated assignment for the purpose of achieving a tax loss; that respondent entered into a business transaction with Belser-Wren Industries, Inc. (represented by him), in which he sought to transfer assets of his client to his own use, and that respondent failed to reveal a conflict of interest to his client.

In the fall of 1973, Belser-Wren Industries, Inc. began the planning for a development of an apartment project known as "India Hook Apartments" in Rock Hill, South Carolina. This corporation entered into a contract for the purchase of a tract of land giving to the purchaser the right to buy through March 1, 1974.

The Belser Company is a South Carolina corporation, owned entirely by its president, Keith Belser, son of the respondent.

Belser-Wren Industries, Inc. is a South Carolina corporation, owned 60% by The Belser Company (30,000 shares) and 40% by John Wren (20,000 shares). Fifteen thousand (15,000) shares of the stock of Belser-Wren Industries, Inc., issued to The Belser Company, were conveyed to a voting trust on February 5, 1973, by which respondent, as trustee, was obligated to vote the 15,000 shares in trust in such fashion as John Wren directed.

India Hook Apartments, Ltd., is the proposed name of a limited partnership, whose partners were to be (1) The Belser Company (general partner and 65% owner), (2) Irvine Belser (limited partner and 25% owner), and (3) Dalton Watkins (limited partner and 10% owner).

Respondent's son, Keith Belser, about the time involved, was engaged through numerous corporations and partnerships in the promotion, construction and sale of apartment complexes and shopping centers under a general plan by which the holdings were sold to investors who needed tax shelters. Under this plan a limited partnership is organized with a general partner who has the financial strength and expertise to manage the project, and with limited partners who invest their cash with a restriction on their liability. The limited partners have the full benefit of the deductible items and therefore derive tax benefits from the project.

It was the plan of Belser-Wren Industries, Inc. to develop an apartment project on the India Hook property at Rock Hill. It had borrowed $300,000.00 from the father of John Wren and had applied to Equitable Life Insurance Company for a loan to finance construction of the project. By the end of December, 1973, it had expended approximately $15,-000.00 on the project, working to the end that title to the land be taken by March of 1974. The plan presented a valuable business opportunity for the corporation which was owned 40% by John Wren.

Respondent was primary counsel for his son, Keith Belser, The Belser Company and Belser-Wren Industries, Inc.,

as well as other companies which his son controlled or in which he had an interest.

In early 1973 the respondent had sold substantial properties, bringing about a capital gain income of approximately $200,000.00, which created an overall tax liability of about $85,000.00. In order to avoid and/or delay payment of such taxes, respondent had need of a tax shelter investment. The respondent, Keith Belser and John Wren discussed the possibility of using the India Hook project properties as an appropriate field to provide such a tax shelter for the respondent.

The respondent drew up the necessary documents for the formation of a limited partnership to be known as India Hook Apartments, Ltd. The Belser Company, of which Keith Belser was the total owner, would be a general partner owning a 65% interest. The respondent would be a limited partner owning a 25% interest, and Dalton Watkins would be a limited partner owning a 10% interest. This partnership did not include John Wren. The Belser Company's contribution was to be cash, management, etc.; the respondent's contribution was to be $120,000.00 cash; and Dalton Watkins' contribution was to be services.

In order for the respondent to take advantage of the tax benefits of the arrangement for the 1973 tax year, it was necessary to complete the documentation prior to December 31 of that year. On December 28, 1973, the respondent and Keith Belser, on behalf of The Belser Company, executed the agreement and certificate of limited partnership. The agreement and certificate was filed with the office of the Secretary of State and the office of the Clerk of Court for Richland County on December 28, 1973. At the same time the respondent prepared the agreement and certificate of limited partnership, he prepared two assignments: first, an assignment of the interests of Belser-Wren Industries, Inc. in the India Hook project, to The Belser Company and, secondly, an assignment of the same interest from The Belser Com-

pany to the India Hook Apartments, Ltd., a limited partnership. The assignment documents were presented to John Wren on January 3, 1974, but he refused to sign the same and engaged an attorney to represent his interests, and from that time forward the relations between Wren on the one hand and the respondent and Keith Belser on the other hand have been strained, resulting in abandonment of all plans to develop the project, and resulting in loss of the valuable business opportunity for Belser-Wren Industries, Inc. and, in turn, for its stockholder John Wren.

The agreement and certificate of limited partnership which was recorded by the respondent on December 28, 1973, recited that an assignment had been made by Belser-Wren Industries, Inc. of the contract to purchase the India Hook property. Such assignments had not been accomplished. It is inferable that some discussions had taken place between the respondent and Keith Belser on the one hand and John Wren on the other hand, relative to assisting the respondent with a tax shelter. Apparently John Wren had not agreed to any details and the proposal, whether submitted to him on December 28, 1973, as contended by the respondent, or on January 3, 1974, as contended by Wren, was simply unpalatable because of lack of appropriate consideration.

John Wren testified that he, as President of Belser-Wren Industries, Inc., refused to sign the assignment because the date on it was in a previous tax year and because ". . . I was to assign all of Belser-Wren's interest in this project to The Belser Company for nothing, . . ."

In these hearings before the Panel and the Board, the first determination to be made is whether the respondent is guilty of misconduct. Under Rule 4 of the Rules on Disciplinary Procedure for Attorneys, one is guilty of misconduct who violates any of the Canons of Professional Ethics. One found guilty of misconduct may be (1) privately reprimanded, (2) publicly reprimanded, (3) indefinitely suspended, or (4) disbarred. Both the Panel and the Board have found

the respondent guilty of misconduct and have recommended that a private reprimand be administered. The Board, by reason of the close vote of its members, has transmitted the matter to this court for final review.

We agree with the conclusion of the Board in its finding of misconduct. Respondent does not contest this finding and submits that this court should remand the case to the Board for a private reprimand.

The Code of Professional Responsibility adopted by this court includes the following:

"DR5-104 Limiting Business Relations with a Client.

(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

. . . .

DR5-105 . . . .

. . . .

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR5-105(C)."

We are of the opinion that the respondent has violated both of these sections of the Code. In addition, the limited partnership documents executed and filed on December 28, 1973, asserted that instruments had been executed which, in fact, had not been accomplished and was never accomplished.

We agree with the Panel wherein it held: "A lawyer runs a high risk in mixing his personal business with his professional business. When he does so he is held to high standards." The transaction which the respondent and The Belser Company attempted to effectuate was ob-

viously to the best interest of the respondent and to the detriment of respondent's client, Belser-Wren Industries, Inc., and in turn to the complainant John Wren, a stockholder.

Although we agree with the Board's finding of misconduct, we are not in agreement as to the appropriate sanction. Based on our review of the entire record, we conclude that a public reprimand is warranted and required.

Respondent has taken the position before this court that inasmuch as the Panel and the Board were in agreement, the Board had no authority to certify the matter to this court. In *Burns v. Clayton,* 237 S. C. 316, 117 S. E. (2d) 300 (1960), we held that appropriate disciplinary action rests upon this court alone. Respondent's contention is without merit; this court has reviewed cases at the instigation of respondents and at the instigation of the complainant. In like manner, it may review a case of its own volition or at the instigation of the Board. The matter was properly certified to this court.

The respondent stands publicly reprimanded by this court in accordance with § 5(c) of the Rules on Disciplinary Procedure.